1
2
3
4        UNITED STATES DISTRICT COURT
5        NORTHERN DISTRICT OF CALIFORNIA
6        EUREKA DIVISION
7
8    ANTHONY M. W.,[1]                          Case No.  21-cv-08018-RMI
9              Plaintiff,
                                                **ORDER RE: CROSS-MOTIONS FOR**
10        v.                                    **SUMMARY JUDGMENT**
11   COMMISSIONER OF SOCIAL                     Re: Dkt. Nos. 15, 19
     SECURITY,
12
               Defendant.
13
14                                **INTRODUCTION**

15        Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his

16   application for disability benefits under Title II of the Social Security Act. *See* Admin. Rec. at 12-

17   24.[2] In June of 2019, Plaintiff filed an application for Title II benefits alleging an onset date of

18   May 19, 2017—later amended to June 30, 2019. *Id.* at 35, 172-73. On February 9, 2021, an ALJ

19   entered an unfavorable decision, finding Plaintiff not disabled. *Id.* at 12-24. In August of 2021, the

20   Appeals Council denied Plaintiff's request for review. *Id.* at 1-3.[3] A few months later, in October

21   of 2021, Plaintiff sought review in this court (*see* Compl. (dkt. 3) at 1-4) and the instant case was

22   initiated. Both parties have consented to the jurisdiction of a magistrate judge (dkts. 8 & 9), and

23   both parties have moved for summary judgment (dkts. 15 & 19). For the reasons stated below,

24   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25   [1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial
     Conference of the United States, Plaintiff's name is partially redacted.

26   [2] The Administrative Record ("AR"), which is independently paginated, has been filed in twenty-four attachments to
27   Docket Entry #12. *See* (dkts. 12-1 through 12-24).

28   [3] In light of the Appeals Council's denial, the ALJ's decision is the "final decision" of the Commissioner of Social
     Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

1    Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

2                                    **LEGAL STANDARDS**

3          The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

4    conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

5    aside a denial of benefits if it is based on legal error. *Flaten v. Sec'y of Health and Human Servs.*,

6    44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout

7    administrative law and directs courts in their review of factual findings at the agency level. *See*

8    *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such

9    relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

10   (quoting *Consol. Edison Co. v. NRLB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*,

11   108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are

12   supported by substantial evidence," a district court must review the administrative record as a

13   whole, considering "both the evidence that supports and the evidence that detracts from the

14   Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The

15   Commissioner's conclusion is upheld where evidence is susceptible to more than one rational

16   interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

17                          **SUMMARY OF THE RELEVANT EVIDENCE**

18         Plaintiff raises a single claim assigning error to the ALJ's evaluation of the medical

19   opinion of Gerald F. Jackson, D.C. *See* Pl.'s Mot. (dkt. 15) at 11-15. As such, the following is a

20   recitation of the evidence that is relevant to that claim.

21         Plaintiff received chiropractic care from Dr. Jackson from January 2005 until December

22   2020, when his insurance coverage expired. *See* AR at 422-805, 1675-78. Throughout this period,

23   Dr. Jackson's reports contain detailed observations of—and treatment for—several medical

24   conditions, including those that the ALJ purported to assess in the present case. *See id.* (discussing

25   spinal, elbow, and shoulder conditions, as well as treatment thereof). On April 1, 2020, Dr.

26   Jackson completed a physical assessment of Plaintiff, detailing his opinion as to how Plaintiff's

27   impairments affect his functional capacity. *Id.* at 977-78. Dr. Jackson found that Plaintiff's

28   symptoms were severe enough to constantly interfere with the attention and concentration required

United States District Court
Northern District of California

2

1    to perform simple work-related tasks and that Plaintiff would need to recline or lie down in excess

2    of the typical breaks during an eight-hour workday. *Id.* at 977. Dr. Jackson further found that

3    Plaintiff would require unscheduled breaks of roughly fifteen to thirty minutes every one to two

4    hours, could walk only ten blocks before being in significant pain or requiring rest, could sit for

5    one hour and stand for one hour in a typical workday, and could occasionally lift ten pounds, but

6    never greater than twenty pounds. *Id.* As a result of these findings, Dr. Jackson concluded that

7    Plaintiff's impairments would cause him to be absent from work more than four times a month. *Id.*

8    at 978. Following this opinion, Plaintiff continued to receive treatment from Dr. Jackson,

9    reiterating his complaints of shoulder and elbow pain. *See, e.g.*, *id.* at 1678 ("[H]e continues to

10   have bilateral shoulder, dislocating left bicipital tendon . . . pain . . . My palpation of the left

11   bicipital tendon with the patient internally and externally rotating his left upper extremity reveals

12   the tendon . . . of the bicep dislocating in and out of its bicipital groove.").

13              **THE FIVE-STEP SEQUENTIAL ANALYSIS FOR DETERMING DISABILITY**

14       A person filing a claim for social security disability benefits ("the claimant") must show

15   that he has the "inability to do any substantial gainful activity by reason of any medically

16   determinable impairment" which has lasted or is expected to last for twelve or more months. *See*

17   20 C.F.R §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case

18   record to determine disability (*see id.* at § 416.920(a)(3)) and must use a five-step sequential

19   evaluation process to determine whether the claimant is disabled. *Id.* at § 416.920; *see also id.* at §

20   404.1520. While the claimant bears the burden of proof at steps one through four (*see Ford v.*

21   *Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop

22   the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d

23   441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the

24   required five-step sequential evaluation process. AR at 16-17.

25       At step one, the ALJ must determine if the claimant is presently engaged in "substantial

26   gainful activity" (20 C.F.R § 404.1520(a)(4)(i)), which is defined as work done for pay or profit

27   and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ

28   determined that Plaintiff had not performed substantial gainful activity during the relevant period.

United States District Court
Northern District of California

3

1    AR at 17.

2         At step two, the ALJ decides whether the claimant's impairment or combination of

3    impairments is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits

4    the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

5    (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be

6    found disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the

7    following severe impairments: bilateral epicondylitis and lumbar disc protrusion. AR at 18. The

8    ALJ found the following conditions to be non-severe: hypertension, prediabetes, and

9    hyperlipidemia. *Id.*

10        At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or

11   combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See*

12   20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe

13   impairments that are considered sufficiently severe so as to prevent any individual so afflicted

14   from performing any gainful activity. *Id.* at § 404.1525(a). Each impairment is described in terms

15   of "the objective medical and other findings needed to satisfy the criteria in that listing." *Id.* at §

16   404.1525(c)(3). In order for a claimant to show that his or her impairment matches a listing, it

17   must meet all of the specified medical criteria—an impairment that manifests only some of those

18   criteria, no matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521,

19   530 (1990). If an impairment either meets the listed criteria, or if one or more impairments are

20   determined to be medically equivalent to the severity of that set of criteria, that person is

21   conclusively presumed to be disabled without a consideration of age, education, or work

22   experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an

23   impairment or combination of impairments that meets or equals the criteria or the severity of any

24   of the listings. AR at 18-19.

25        If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's

26   residual functional capacity ("RFC"), which is defined as the most that a person can still do

27   despite the limitations associated with their impairment. *See* 20 C.F.R. § 404.1545(a)(1). Here, the

28   ALJ determined that Plaintiff retained the ability to perform work at the light exertional level,

United States District Court
Northern District of California

1    subject to certain exertional and postural exceptions. AR at 19.

2           Following the formulation of the RFC, the ALJ must determine—at step four—whether the

3    claimant is able to perform her past relevant work, which is defined as "work that [the claimant

4    has] done within the past 15 years, that was substantial gainful activity, and that lasted long

5    enough for [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ

6    determines, based on the RFC, that the claimant can perform her past relevant work, the claimant

7    will not be found disabled. *Id.* at § 404.1520(f). Otherwise, at step five, the burden shifts to the

8    agency to prove that the claimant can perform a significant number of jobs that are available in the

9    national economy. *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the

10   Medical-Vocational Guidelines (commonly referred to as "the grids") (*see* 20 C.F.R Pt. 404 Subpt.

11   P, App. 2); or, alternatively, the ALJ may rely on the testimony of a vocational expert ("VE").

12   *Ford*, 950 F.3d at 1149 (citation omitted). A VE may offer expert opinion testimony in response to

13   hypothetical questions about whether a person with the physical and mental limitations imposed

14   by the claimant's medical impairment(s) can meet the demands of the claimant's previous work,

15   either as the claimant actually performed it or as generally performed in the national economy, or

16   the demands of other jobs that may be available in the national economy. *See* 20 C.F.R. §

17   404.1560(b)(1). An ALJ may also use other resources for this purpose, such as the Dictionary of

18   Occupational Titles ("DOT"). *Id.*

19          At step four, the ALJ determined—based on the VE's testimony—that Plaintiff could not

20   perform his past relevant work as a stock clerk and heavy truck driver. AR at 22. At step five,

21   again based on VE testimony, the ALJ determined that Plaintiff would have been able to perform

22   the requirements of an office helper, cashier, or inspector. *Id.* at 23-24. Accordingly, the ALJ

23   determined that Plaintiff had not been disabled at any time during the relevant period. *Id.* at 24.

## DISCUSSION

25          The ALJ in this case erred by failing to comply with the requirements of 20 C.F.R. §

26   404.1520c in evaluating the medical opinion of Dr. Jackson. The ALJ's finding that Dr. Jackson's

27   opinion was "not persuasive" is, therefore, unsupported by substantial evidence.

28

United States District Court
Northern District of California

Under recently promulgated regulations that apply to Plaintiff's application,[4] ALJs are required to evaluate the "persuasiveness" of all medical opinions according to several factors. *See* 20 C.F.R. § 404.1520c(a). The first two factors—supportability and consistency—are considered the most important, and the ALJ is required to explicitly address them in his or her decision. *See id.* at § 404.1520c(b)(2); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The agency must . . . explain how [it] considered the supportability and consistency factors in reaching these findings."). The ALJ "may, but [is] not required to," explain how he or she considered the remaining factors listed in the regulations. 20 C.F.R. § 404.1520c(b)(2).[5]

These new regulations have supplanted the evaluation scheme that existed under 20 C.F.R. § 404.1527, which included a hierarchy among medical sources, deference to certain medical opinions, and the assignment of weight to all medical opinions. Ninth Circuit caselaw, since overturned, interpreted these former regulations to require "that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion . . . ." *Woods*, 32 F.4th at 792. Even under the new regulations, however, an ALJ still "cannot reject an . . . opinion as unsupported or inconsistent without providing an explanation supported by *substantial evidence*." *Id.* (emphasis added); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

The ALJ in the present case found Dr. Jackson's opinion "not persuasive" for three principal reasons. AR at 22. First, the ALJ found that although "Dr. Jackson has a treating relationship with the claimant, he is not an acceptable medical source." *Id.* Next, the ALJ relied on the fact that Dr. Jackson "indicated that the claimant was recovering from a recent surgery at the time of his opinion." *Id.* Finally, the ALJ referenced her findings with respect to the opinions of Dr. Amon and Dr. Williams, which she found persuasive, as supporting her unpersuasive finding

---

[4] The new regulations apply to "claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c. Because Plaintiff's application was filed in 2019, the new regulations are controlling. AR at 172-73.

[5] The remaining, typically discretionary factors include the medical source's relationship with the claimant (comprised of the length, frequency, purpose, and extent of the relationship), relevant specialization(s) of the medical source, as well as the source's familiarity with, or understanding of, the disability program's policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c)(3)-(5).

1    as to the opinion of Dr. Jackson. *Id.*

2             As to the first of these justifications, the Commissioner concedes that "[t]o the extent that

3    the ALJ found that one of the reasons Dr. Jackson's opinion was not persuasive was that he was

4    not an acceptable medical source, this was an improper basis." Def.'s Mot. (dkt. 19) at 10.

5    The Commissioner is correct, as the new regulations apply to "all . . . medical opinions"[6]—not just

6    those offered by an acceptable medical source ("AMS"). *See* 20 C.F.R. § 404.1520c; *see also*

7    Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January

8    18, 2017) ("[W]e will consider and articulate our consideration of all medical opinions, regardless

9    of AMS status, consistent with the standard . . . in . . . 404.1520c."). As such, Dr. Jackson's

10   opinion was entitled to assessment under the framework set forth in 20 C.F.R. § 404.1520c,

11   irrespective of the fact that he does not qualify as an AMS. *See* 20 C.F.R § 404.1502(a) (listing the

12   sources that qualify as an AMS, which does not include chiropractors). It was error for the ALJ to

13   rely on the fact that Dr. Jackson was not an AMS as a basis for finding his opinion unpersuasive.[7]

14            The Commissioner contends, however, that "the error by the ALJ was harmless because

15   the ALJ also gave other good reasons consistent with the new regulations for finding Dr.

16   Jackson's opinion not persuasive . . . ." Def.'s Mot. (dkt. 19) at 10. An error is harmless only

17   "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability

18   conclusion*." Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also*

19   *Ford*, 950 F.3d at 1154 ("We may affirm the ALJ's decision even if the ALJ made an error, so

20   long as the error was harmless, meaning it was 'inconsequential to the ultimate nondisability

21   determination.'") (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). In effect,

22   the Commissioner argues that the other two reasons provided by the ALJ—the timing of Dr.

23   Jackson's opinion and the reasons given with respect to Dr. Amon and Dr. Williams' opinions—

24

25   [6] A "medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in various work-related abilities. 20

26   U.S.C. § 404.1513(a)(2). A "medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law . . . ." *Id.* at § 404.1502. As a licensed

27   chiropractor, Dr. Jackson was clearly a medical source and thus his opinion qualifies as a medical opinion.

28   [7] While an AMS is still necessary to establish the existence of a medical impairment (*see* 20 C.F.R. § 404.1529), that requirement is separate from the mandatory evaluation of all medical opinions under 20 C.F.R. § 404.1520c.

United States District Court
Northern District of California

1    were themselves sufficient to support a finding that Dr. Jackson's opinion was unpersuasive,

2    thereby rendering the aforementioned error inconsequential to that determination. Because neither

3    of these reasons comply with the requirements of 20 C.F.R. § 404.1520c, nor do they appear to be

4    supported by substantial evidence, the court disagrees.

5         As stated *supra*, the ALJ's second justification for finding Dr. Jackson's opinion

6    unpersuasive was the fact that Plaintiff was recovering from surgery at the time of the opinion. AR

7    at 22; *see also* Def.'s Mot. (dkt. 19) at 11 ("The ALJ properly considered the timing of Dr.

8    Jackson's medical opinion dated April 1, 2020 as possibly impacting the persuasiveness findings

9    since Plaintiff had just undergone on March 12, 2020 a second surgery in his left shoulder . . . .").

10   The ALJ, however, is required to explicitly address the factors of supportability and consistency in

11   their decision. *See* 20 C.F.R. § 404.1520c(b)(2). Simply taking note of the timing of Dr. Jackson's

12   opinion, without further explanation, is insufficient to discharge this duty. *See Woods*, 32 F.4th at

13   792 ("The agency must . . . *explain* how [it] considered the supportability and consistency factors

14   in reaching these findings.") (emphasis added); *see also Labryssa v. Kijakazi*, No. 21-CV-04233-

15   BLF, 2022 2L 2833981, at \*6-7 (N.D. Cal. July 20, 2022) (concluding that an ALJ must engage

16   with a medical opinion in a "meaningful sense" in evaluating the consistency and supportability

17   factors, and that a "passing assessment" which fails to "substantively engage" with the opinion is

18   not supported by substantial evidence). At the very least, the ALJ should have delineated which (if

19   any) of the required two factors she was attempting to address. *See* 20 C.F.R. § 404.1520c(b)(2);

20   *see also Woods*, 32 F.4th at 794 n.4 ("ALJs should endeavor to use these two terms of art—

21   'consistent' and 'support'—with precision."). On remand, the ALJ must address—explicitly—the

22   factors of supportability and consistency.

23        *Even if* the ALJ had specified whether she was addressing supportability or consistency,

24   however, there is also some uncertainty as to whether this reasoning is supported by substantial

25   evidence. *See Woods*, 32 F.4th at 792 ("[A]n ALJ cannot reject an . . . opinion as unsupported or

26   inconsistent without providing an explanation supported by substantial evidence."). While Dr.

27   Jackson's opinion indicated that Plaintiff was "[r]ecovering from [a] recent surgery," it is unclear

28   the extent to which Plaintiff's observed limitations could be attributed to his post-surgery status.

United States District Court
Northern District of California

1    *Id.* at 977. In other words, it is not altogether clear what Dr. Jackson's notation of Plaintiff's post-

2    surgery status was intended to signify. In accordance with the instructions set forth *infra*, the ALJ

3    should reconsider this rationale and, if she determines that it is still viable, explain her reasoning

4    and the basis for it in greater detail.[8]

5          Finally, the ALJ concluded her evaluation of Dr. Jackson's opinion as follows: "For these

6    reasons, as well as those given to Dr. Amon and Dr. Williams' opinion, the undersigned finds Dr.

7    Jackson's opinion not persuasive." AR at 22. Though not entirely clear, this could be construed as

8    an attempt to address the consistency of Dr. Jackson's opinion. *See* 20 C.F.R. § 404.1520c(b)(2).

9    As discussed, however, the regulations require that the factors of supportability and consistency be

10   addressed explicitly. *See id.*; *see also Woods*, 32 F.4th at 792. The lack of clarity in the ALJ's

11   statement exemplifies the very rationale behind the regulations. Put simply, the court does not

12   understand what the ALJ intended by this statement and is left guessing at its meaning. Not only

13   did the ALJ fail to specify whether she was indeed addressing the consistency factor, she also

14   made no attempt to articulate how Dr. Jackson's opinion might be inconsistent with those of Dr.

15   Amon and Dr. Williams. As such, the ALJ's reasoning failed to comply with the well-delineated

16   requirements of 20 C.F.R. § 404.1520c(b)(2). The court again stresses the need for the ALJ to

17   explicitly address (and explain) the two required factors on remand.

18         In the event that the ALJ was simply attempting to find that Dr. Jackson's opinion was

19   inconsistent with those of Dr. Williams and Dr. Amon, this too would be problematic. In assessing

20   Dr. Williams' and Dr. Amon's opinions, the ALJ relied on Plaintiff's reporting that, "with

21   treatment, his elbow pain improved eighty percent and 'his shoulder is functional and comfortable

22   with him' with 'no major complaints.'" *See* AR at 21-22, 1240, 1557. The ALJ also noted

23   Plaintiff's ability to "maintain his personal care, drive, vacuum[,] sweep, mop, and do laundry."

24   *Id.* at 21.

25         ALJs are not permitted to "cherry-pick" from the record in support of a denial of benefits.

26   *See Garrison v. Colvin*, 278 F.3d 995, 1023 n.23 (9th Cir. 2014) (quoting *Scott v. Astrue*, 647 F.3d

27   _____

28   [8] The court notes that, while technically a discretionary factor, Dr. Jackson's long-term treatment relationship with Plaintiff would weigh decidedly in favor of finding his opinion more persuasive. *See* 20 C.F.R. at § 404.1520c(b)(3).

United States District Court
Northern District of California

734, 739-40 (7th Cir. 2011)). The ALJ in the present case appears to have relied on isolated snippets from the record to support her persuasiveness findings as to Dr. Williams and Dr. Amon. *See Garrison*, 278 F.3d at 1017 ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years . . . ."). The ALJ's reliance on a *single* report by the Plaintiff that his "shoulder is functional and comfortable" ignores over a decade of prior complaints of shoulder pain and associated limitations. AR at 21-22. Even more significantly, the ALJ ignored evidence of both pain and limitations that *followed* Plaintiff's statement. *See id.* at 1653 (notation by Andrew K. Burt, M.D. that "[t]here was little to no relief from . . . surgery and post-operative physical therapy"); 1678 (observation by Dr. Jackson that Plaintiff "continues to have bilateral shoulder, dislocating left bicipital tendon . . . pain . . . My palpation of the left bicipital tendon with the patient internally and externally . . . reveals the tendon . . . of the bicep dislocating in and out of its bicipital groove"); 40-41 (hearing testimony of the Plaintiff that "they did surgery on my left shoulder twice, which it's now worse than it was before").[9]

The same is true of the ALJ's reliance on the notation by Skye Heston, M.D. that Plaintiff had "no major complaints." *Id.* at 22, 1557. Not only would it be error for the ALJ to rely on such an isolated instance of improved symptoms (*see Garrison*, 278 F.3d at 1017), but it also appears that the ALJ may have misconstrued this observation. The statement at issue appears in the report from Dr. Heston's annual checkup of Plaintiff, under the section entitled "Chief Complaint." *Id.* at 1557. A chief complaint "is a concise statement . . . of the symptoms that caused a patient to seek medical care." Wagner, Michael, et al., *Chief Complaints and ICD Codes*, Handbook of Biosurveillance, https://www.ncbi.nlm.nih.gov./pmc/articles/PMC7161385/ (Sep. 2, 2007). Considering that this was an *annual checkup*, however, Plaintiff was not (on this occasion) seeking medical care specifically in response to any of his conditions. As such, it seems unremarkable that the "Chief Complaint" section of the annual checkup report includes a

---

[9] Regarding the continuing limitations associated with Plaintiff's shoulder condition, Plaintiff testified at the hearing that "to roll over on my left side in bed, I have to grab it with my other arm and pop it out so it will lay that way. To reach up out of the cover to grab, you know, something with my left hand, I have to . . . pop it out so it will reach that high." *Id.* at 41. Plaintiff also testified that he had difficulties showering and driving as a result of his shoulder condition. *Id.*

United States District Court
Northern District of California

generalized statement such as "no major complaints." AR at 22, 1557; *see Chief Complaint,* Santa Ana Unified School District, https://www.sausd.us/cms/lib/CA01000471/Centricity/Domain/4950/2.11%20Chief%20C omplaint%20Read.pdf (last visited, Oct. 24, 2022) ("Not all patients have a chief complaint; a patient may come to you to have a routine physical exam to assess their current health status."). Most significantly to the present case, Dr. Heston did in fact take note of Plaintiff's current health conditions—including "[a]dhesive capsulitis of [the] left shoulder"—under a section entitled "Active Problems." *See* AR at 1557.

Finally, with regard to Plaintiff's ability to "maintain his personal care, drive, vacuum[,] sweep, mop, and do laundry" (*id.* at 21), the court stresses that many routine daily activities that a claimant may engage in "are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ, therefore, is required to explain in greater detail how Plaintiff's ability to engage in these activities is consistent with his ability to work.

As such, the court finds that the mere reference to the opinions of Dr. Williams and Dr. Amon as grounds for finding Dr. Jackson's opinion unpersuasive is not supported by substantial evidence. *See Woods*, 32 F.4th at 792; *see also* 42 U.S.C. § 405(g). If, on remand, the ALJ still seeks to find Dr. Jackson's opinion unpersuasive, she must provide greater support for such a conclusion.

On remand, the ALJ is **ORDERED** to consider the issues raised in the Plaintiff's briefing and this Order and to modify any ensuing ALJ opinion such as to clearly reflect the fact that these issues have been considered and addressed under the regulations and pursuant to the case authorities set forth herein. Specifically, the ALJ is required to modify her opinion so as to properly evaluate the opinion of Dr. Jackson under the requirements of 20 C.F.R. § 404.1520c(b)(2)—including specific references to the factors of supportability and consistency, as well as explanation(s) that are supported by substantial evidence.

The ALJ is further **ORDERED** to send questionnaire(s) to Dr. Jackson, such as to clarify how Plaintiff's post-surgery status factored into his medical opinion—if at all. Put differently, the ALJ's questions should seek to determine the extent to which the limitations noted in Dr.

United States District Court
Northern District of California

Jackson's opinion were attributable to the Plaintiff's recent surgery, as opposed to being limitations which were present before—and continued after—his opinion. Because further development of the record in this regard would be useful, the court declines to credit Dr. Jackson's opinion as true. *See, e.g.*, *Garrison*, 278 F.3d at 1020 (describing the required standard under the credit-as-true doctrine, one element of which is that the record be fully developed).

### CONCLUSION

Accordingly, for the reasons stated herein, Plaintiff's Motion for Summary Judgment (dkt. 15) is **GRANTED**, and Defendant's Cross-Motion (dkt. 19) is **DENIED**, and the case is remanded for further evaluation consistent with the findings and conclusions set forth herein.

**IT IS SO ORDERED.**

Dated:  March 3, 2023

ROBERT M. ILLMAN
United States Magistrate Judge

United States District Court
Northern District of California